Curia, per

Evans, J.
Much of the argument on the part of the appellants has been based on the supposition that there was a clear and settled construction of the Act of 1824 in opposition to the circuit decision in this case; and we have been referred to Lord Coke for the dictum that common opinion, communis opinio, is good authority in law. Where a statute has never been judicially expounded, and especially if it be one of general operation, there can be no doubt that an enlightened public opinion, as to its meaning, is entitled to great consideration. But the misfortune of the appellants in this case is, that the evidence of this communis opinio is wanting. The evidence is rather on the other side, for in the only cases in which the subject, as far as I know, has been presented to a judicial mind, the opinion expressed was on the other side. In 1831 Chancellor Harper said incidentally that the Act of 1824 had no reference to the Act of 1788; and in Thomson vs. Gaillard, (3 Rich. 418,) my brother O’Neall said that infants were allowed five years.. In neither of these rvas that a point in the case. The remarks were made incidentally, and without the attention being drawn particularly to the subject: and they are not now referred to as authority, *617 but merely to rebut the assumed fact (hat there has been any settled opinion on the subject. The dictum of Chancellor Harper has been accessible to the profession for fifteen years, and I think it very unlikely that, after the publication of that case, the public mind should settle down upon a contrary conclusion. A period of twenty-four years elapsed from the passing of the Act of 1824 until this case arose, in 1849. It may seem strange that in that period of time the question was never made, and yet I remember that, in King vs. Smith, the question first presented itself to the Court, for adjudication, whether, under the Act of 1712, possessions of successive tenants could be tacked together to complete the time of the statutory bar. Upon inquiry I well remember that the oldest members of the profession and none of the Judges could remember that the question had ever been made or decided. I have made these remarks because this supposed adjudication by popular opinion has- been so earnestly pressed upon us.
To decide the question made in the brief, it will be necessary to bring in review the several statutes upon which the determination of the case depends. The first statute is the Act of 1712, sec. 2, (2 Stat. 684,) which is in these words: “ That if any person or persons, to whom any title to lands, tenements or hereditaments within this province shall hereafter descend or come, do not prosecute the same within five years after such title accraed, that then he, she or they,’ and all claiming under him or them, shall be forever barred to recover the same ; excepting any person or persons beyond the seas, or out of (he limits of this province, feme covert, or imprisoned, who shall be allowed the space of seven years to prosecute their right or title or claim to any lands, tenements or hereditaments in this province after such right and title accrued to them or any of them, and at no time after the said seven years; and also excepted any person or persons that are under the age of twenty-one years, who shall be allowed to prosecute their claims at any time within two years after they come of age, and if beyond the seas, three years? This Act was passed about forty years after *618 the first settlement of the province, and its leading object, as appears by its enactments, was to quiet the titles of the actual settlers on the lands. The colony of Carolina, in its infancy, and especially whilst it belonged to the Lords Proprietors, was weak and much beset by external and internal foes. It was of great importance to give to the actual settler those patriotic feelings which spring from the fact that he was the owner of the land which he occupied. To accomplish this 'object a time of limitation was established, which was only one-fourth of the time allowed in the mother-country, and much less, I believe, than in any of the other colonies. The scheme of the Act, so far as it is involved in this case, seems to have been to give to all persons five years within which to bring their actions against the occupant of their lands, but to except from this rigid rule two descriptions of persons: 1st. Those who are beyond seas or out of the limits of the province,-, femes covert, and persons imprisoned, who were allowed seven years from the accrual of their actions; and 2d. Infants, who were allowed two years after they came to age, and if beyond seas, three years. It would be a most unreasonable construction to say that, if a squatter should enter on an infant’s land when he was twenty years old, the infant would be barred if he did not bring his action within two years after his majority. This would allow him only three years to bring his action, whereas the Act allows all persons five years. Like all other persons a right of action accrues to him when the trespasser enters on his land ; but unless he should remain there five years, two of which was.after the infant attained the age of twenty-one, he could acquire no title.
Thus the law stood until 1788, when it was enacted : “ That persons under twenty-one years shall be allowed five years after attaining the said age to prosecute their right or title to lands, four years after attaining such age to prosecute any personal action, to which they are or may be entitled.” — (5 Stat. -77.) The only alteration made by this clause of the Act of 1788, was to enlarge the time within which infants might bring their actions for land. By fixing the period of limitation to five years, after *619 attaining to age, it did happen that infants were put upon the same footing as adults, and the statute did not run against them until they were adults ; but I do not perceive that any inference can be drawn from this, that would not follow equally if the Act of 1788 had extended the time to four or six years. The right of action accrued to him when the trespasser entered; but during the period of infancy the time was not computed so as to perfect the trespasser’s title. That a right of action accrued to an infant from the first entry is clear, because by a properly constituted guardian, or prochein ami, he can sue to recover lands, and if he fail or let fall his action, he would probably be barred, as other plaintiffs are.
I think, therefore, I may fairly conclude that the general scheme of the Act of 1712 is in no way altered by the Act of 1788, except by the extension of the time allowed to infants to bring their actions. Thus stood the law from 1788 to 1824. In the mean time the country had undergone great changes. The reasons for so short a time of limitation no longer existed. Those who are familiar with the events of that period know that great complaint was made about the frauds which squatters were enabled to practice by reason of the shortness of the time of limitation, and much public clamor was raised against it. Another evil complained of in relation to the statute of limitations was, that a question had arisen which was not likely to be settled by the courts. We are all familiar with the cases of Rose vs. Daniel (2 Tread. 549); Faysoux vs. Prather (1 N. & McC. 296); Cook vs. Wood (1 McC. 139), and Gibson vs. Taylor (3 McC. 451). The question in these cases was, whether the infant heir was barred when the statute had commenced to run against the ancestor in his lifetime, but the time allowed had not run out before the descent was cast on the infant heir. In the first of these cases it was decided, by a majority of the Court, that an infant was not barred, in such case, until five years after he attained the age of twenty-one years. This case was decided in 1814. In 1818, in the case of Faysoux vs. Prather, this decision was reversed, and it was decided, by a majority of one in the *620 Court, that, where the statute began to run against the ancestor, it would go on, notwithstanding the descent was cast on a minor heir. This decision in its turn was to some extent unsettled in the case of Cook vs. Wood, the Court being equally divided on the main question. Each section of the Court adhering to its opinion, the case of Gibson vs. Taylor had been on the docket for several terms (according to my recollection) undecided, on account of the equal division of the Court. Under these circumstances, the Act of 1824, entitled “An Act for the amendment of the law, in divers particulars therein mentioned,” was passed. (6 Stat. 237.) The 5th section provides “that the statute of limitations shall not hereafter be construed to defeat the rights of minors when the statute has not barred the right in the lifetime of the ancestor before the accrual of the right of the minor.” This settled, for the future, at least, in very concise and carefully selected words, the controversy which had existed for ten years in the Court. The 7th section is in these words: “that the second section of the Act of 1712, limiting the time for the prosecution of a right or title to lands to five years, be altered so as to extend the time for the prosecution of such right or title to ten years.” This" section seems to have been drawn with the same conciseness and careful selection of words as the 5th section before mentioned. By it all persons, those beyond seas, or out of the limits of the State, or femes covert, or imprisoned, or infants, are allowed ten years. But it is contended that infants are also allowed' ten years after they come of age to prosecute their titles, which in some cases would protect their fights against an adverse possession of thirty years — as where the action accrued when the infant was one year old; then his right would be protected for the twenty years of his infancy and ten years longer. Do the words of the 7th section of the Act of 1824 require of us this construction? If this was intended, it seems to me that the words selected are not very appropriate to convey the idea. The clause to be altered is specially referred to as the 2d section of the Act of 1712. To know what was intended to be altered, reference must be had to the statute book: there the 2d *621 section is found, which declares all persons to be barred in five years, except certain enumerated classes. If, then, you alter this 2d section, by inserting ten instead of Jive, you have done all that the Legislature, by the words used, have given any authority to do. But it is argued that as all statutes on the same subject are to be construed as one statute, the 2d section of the Act of 1712 must be construed to mean that section with the substitution of five years in the exception in favor of infants, as provided for by the Act of 1788, instead of “two, and, if beyond seas, three.” This seems to me to be an exceedingly artificial rule of construction, and one which there can be no propriety in resorting to, when the Legislature has, in unmistakeable language, designated the particular section which it was intended to alter. The 2d section of the Act of 1712, as amended by the Act of 1788, is not the same section as it appears on the statute book. The rights of infants was in the view of the Legislature at the passage of the Act, as appears by the 5th section; and as the time of limitation as to them depended on the Act of 1788, it seems difficult to conceive why all reference to that Act and to the rights of infants was omitted, except on the supposition that the Act of 1824 intended to leave them on the same footing they were by the existing law. If it was not so intended, it was easy to say so, and not leave that intention to be sought for by the application of artificial rules of construction, at variance with the obvious meaning of the words used. If one were asked what was the statute of limitations, the question might be answered by referring to all the Acts on the subject; and in this sense these words seem to be used in the 5th section of the Act. But if the question be asked what is the 2d section of the Act of 1712, it should be answered by referring to the statute, or by repeating the words of the section. To give to them a more enlarged interpretation, as has been contended for by the appellants, would impute to the Legislature a meaning which the words used in cheir ordinary import do not require, and which, I have no doubt, was never intended. That the most obvious import of the words of the Act of 1824 is that which I have given to them, is, I think, *622 very manifest, from the fact that two Judges (without mature deliberation, I admit,) have so expounded them. Suppose the 7th section of the Act had been in words like these: “ that hereafter all persons shall be allowed ten years within which to commence their actions, and that the 2d section of the Act of 1712 be repealed.” If the Act of 1788 was a part of the 2d section, as contended, then that would be repealed, and where could we then look for any saving of the rights of infants ? There would be none, and they would' be barred in ten years as other persons would be, for the word persons would include them as well as others. The opinion of this Court, therefore, is, that the decision of the Circuit Court was right, and the motion is dismissed.
Johnston, Dunkin and Dargan, CC., and Wardlaw, Frost and Whitner, JJ., concurred.